485 So.2d 1039 (1986)
Elise WOOLFOLK
v.
James F. TUCKER.
No. 56094.
Supreme Court of Mississippi.
March 5, 1986.
*1040 John L. Hatcher, Cleveland, for appellant.
William O. Luckett, Jr., Clarksdale, for appellee.
Before ROY NOBLE LEE, P.J., and SULLIVAN and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Circuit Court of Tunica County, wherein the appellant, Elise Woolfolk was found guilty of the malicious prosecution of James F. Tucker. A jury awarded $85,000 in damages to Tucker. From this judgment Woolfolk appeals.
In 1981, appellant Elise Woolfolk and her husband moved to Tunica County, Mississippi, from Houston, Texas, and commenced construction of a home. James Tucker, d/b/a Tucker Electric, contracted to do the electrical work. While the house was under construction, the appellant's husband died. Appellee was paid for the contract work, but had done some extra work at the residence and payment for that work was in dispute.
The appellee, James F. Tucker, age 52, had been a resident of Tunica for 27 years. He was employed as a service man by Mississippi Power & Light Company and had been an employee of said company since he graduated from high school. He was also sole owner of Tucker Electric Company, a corporation organized on February 5, 1980, which he operated as a sole proprietor prior to that date.
On September 25, 1981, while driving a company vehicle, with MP & L insignia, and on company time, the appellee saw a sign advertising appellant's home for sale. He drove the company vehicle onto the property of the appellant to inquire about the payment of her bill with Tucker Electric Company, his privately owned business, since it was apparent that she was planning to move to another location. An intense argument ensued with both parties giving different versions.
Appellee Tucker alleges that he approached the appellant in a friendly manner and the following conversation allegedly ensued:
A. I stopped the truck, walked out to where her and her yard boy was working, pointed toward the sign and said, "Hey, lady, you can't leave Tunica County yet; we haven't voted on that."
* * * * * *
A. She said, "If I can sell this goddamn house, I'm leaving Tunica County." And, she said, "Listen, while I was in Houston, I got a bill from you. And, if you think I'm going to pay you, you're crazy as hell. I've already paid you too goddamn much." She said, "I ain't paying you a goddamn penny."
Q. Is that what she said to you?
A. I said, "Well, lady, if you're not going to pay me, it was a bid job, you knew what it was going to cost, if you're not going to pay me, then I'm going to have to move my material."
* * * * * *
Q. Do what?
A. She said I didn't have enough artillery to remove my material. And, I said, "Yes, ma'am, I think I have."
Q. All right, now what tone of voice were you using when you made that comment to her?

*1041 A. Similar to what I am now, may be not this loud because you told me to speak up.
Q. All right, what tone of voice was she talking to you if you recall?
A. Very loud. In fact, she told me if I didn't leave the premises then, I'd leave my goddamn ass laying there. And, I said, "Lady, I'm leaving." And, I did leave.
The appellant's recollection of this incident was remarkably different. According to appellant the appellee approached her and the following conversation then ensued:
A... . So, when he drove up in the drive that day, he said, "I see you're leaving." I said, "Well, not until I can sell the house."
Q. Did you say that in that tone of voice?
A. I said, yeah, "Not until I can sell the house." And, he said "I come to get my money." And, I said, "Well, you know, I got that bill out of that letter box for four hundred and fifty dollars, but you told me you'd charge a hundred and fifty." And he said  and, I said, "I'm not going to pay that much again for another one of those things whatever it was."
Q. Is that how you said it to him or did you say, "I'm not going to give you a g.d. penny"?
A. No, sir, I did not say that. I did not.
* * * * * *
Q. Did you use the word "g.d." at all?
A. No, I did not. He said, and I quote, he said, "I want my goddamn money."
* * * * * *
A. Well, I heard  he said, "I want my goddamn money", and I said, "I'm not going to pay that much money when you told me you'd do it for a hundred and fifty dollars." And he said, "I'll tear every g.d. thing out here down. I'll put your you know what in the dark from now on." And, I said, "I will call that Mississippi Power & Light Company, too," And, he
Q. (Interrupting)  who said that last thing you said? "I will" what?
A. I said, "I will call the Mississippi Power & Light Company if you do put me in the dark." And, he said, "You are talking to the g.d. Mississippi Power & Light," he said, "Whose truck do you think that is?" And, I said, "Well, I'm not going to pay that." And, he said, "I've got  he said, "I'll kill you; I've got something for you right here." So, he ran to the truck, opened the door and looked under the driver's seat, and he didn't come out with anything. Lillie says, "Run, Miss Elise," But, I didn't, I stood there. And, he got in his truck then, and he said, "I'll be back; I'll get you." Now, that's exactly the words that we said and all I remember having been said.
The appellant called the sheriff's office and he advised her to contact Justice Court Judge J.W. Thornton. The appellant told the justice court judge what had transpired and he made out an affidavit, had her sign it and issued the warrant for the arrest of the appellee on a charge of disorderly conduct. After Woolfolk left, the Judge called Tucker and advised him of what happened. The judge told Tucker that he would not have to be taken into physical custody and he could simply come by the judge's office at his own convenience to pick up the warrant. Tucker did not have to make bail and was left on his own recognizance and given the time for him to appear at the trial.
The only witnesses were the appellant and the appellee, at the hearing which resulted in acquittal of appellee.
On February 6, 1982, Tucker filed suit in the Circuit Court of Tunica County charging Woolfolk with malicious prosecution and abuse of process stemming from the September 25, 1981, occurrence, seeking actual damages of $250,000 and punitive damages of $1,000,000. Woolfolk then filed her answer and counter-claim charging plaintiff with trespass and slander seeking the same amount of actual and punitive damages.
It should be noted that the complaint filed alleged malicious prosecution and *1042 abuse of process. The clarification of this distinction between the two causes of action, as set out in State for the Use and Benefit of Foster v. Turner, 319 So.2d 233 (Miss. 1975), would be in order here:
While some cases have confounded the action for abuse of process with the action for malicious prosecution, the two are essentially different and independent. An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued. Thus it is said in substance that the distinction between the two is that the malicious use of process is the employment of process for its ostensible purpose, but without reasonable or probable cause, whereas the malicious abuse of process is the employment of a process in a manner not contemplated by law, or to obtain an object which such a process is not intended by law to effect.
(319 So.2d at 236).
This would not be a case of abuse of process, since there is no allegation of abusive or improper use of process after the action was filed. After disposing of that part of the allegation, we address the following assignments of error:
ASSIGNMENT OF ERROR NO. I
I. The trial court erred in giving Instruction P-1 offered by the appellee over the objection of the appellant, and refusing Instruction D-3 offered by the appellant, thereby failing to properly instruct the jury on the essential elements of malice and lack of probable cause.
ASSIGNMENT OF ERROR NO. II
II. The trial court erred in giving Instruction P-2 offered by the appellee over the objection of the appellant, resulting in an improper instruction on the elements of damage to be considered by the jury.
A review of the record shows that appellant did not object to instruction P-1 as offered in its original form. Appellant objected to the amended form of P-1 which was denied.
Instruction P-1
If you find from a preponderance of the evidence in this case that:
1. The defendant Woolfolk instituted a criminal proceeding against the plaintiff Tucker;
2. The defendant did not have an honest belief based upon reasonable grounds that Mr. Tucker had committed the crime of disorderly conduct; the fact that M.K. Tucker was acquitted of the criminal charge constitutes prima facie evidence that the defendant instituted the proceeding without probable cause and with malice.
3. The defendant instituted the proceeding primarily for apurpose other than that of bringing the plaintiff to justice; and
4. This proceeding has terminated in the plaintiff's favor,
then your verdict shall be for the plaintiff Tucker and you shall award him damages in accordance with the other instructions of the Court.
Instructions P-2 and D-3 should be examined together.
Instruction P-2, which was given, reads:
Instruction P-2
If you find for the plaintiff, then you may award plaintiff such damages for mental pain and anguish without physical injury as you find from a preponderance of the evidence in this case to have been proximately caused by the negligent act(s) of the defendant. Additionally, you may consider the following elements of damages as may be shown by a preponderance of the evidence:
1. loss of business opportunities,
2. loss of income,
3. diminishment of reputation and standing in the community
Instruction D-3, which was refused, reads:

*1043 INSTRUCTION D-3
The court instructs the jury that in order for the complainant, James F. Tucker, to recover against the defendant, Elise Woolfolk, then the complainant James F. Tucker must show by a preponderance of the evidence that the affidavit signed by Elise Woolfolk was done so with malice and further was done so with a want of probable cause. If the same James F. Tucker fails to show either of these elements then the complaint of James F. Tucker against the defendant Elise Woolfolk should be dismissed.
"Malice" in the law of malicious prosecution means that the prosecution was instituted primarily because of a purpose other than that of bringing an offender to justice.
Probable cause has been defined as an honest belief in the guilt of the person accused and reasonable grounds for such belief.
Therefore, if you the jury believe that Elise Woolfolk went to Judge J.W. Thornton and signed an affidavit in order to protect herself or if you believe that Elise Woolfolk had an honest belief that James F. Tucker was guilty of disorderly conduct and that there were reasonable grounds for such belief, if you believe either of the aforesaid propositions then the complaint of James F. Tucker against Elise Woolfolk should be dismissed.
The elements constituting malicious prosecution were set forth by this Court in Harvill v. Tabor, 240 Miss. 750, 128 So.2d 863 (1961) as follows:
(1) The institution or continuation of original judicial proceedings, either criminal or civil (the proceeding here is criminal); (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceedings; and (6) the suffering of damages as a result of the action or prosecution complained of. 34 Am.Jur. Malicious Prosecution, § 6, p. 706; 54 C.J.S. Malicious Prosecution § 4, p. 955.
See also, Brown v. Kisner, 192 Miss. 746, 6 So.2d 611 (1942).
It is not disputed that malice and probable cause are essential elements in proving malicious prosecution. Appellant's argument appears to be based on the fact that the terms "malice" and "probable cause" are not specifically stated in the instructions.
For purposes of a malicious prosecution action, the term "malice" is used in an artificial and legal sense and simply means the prosecution was instituted "primarily because of a purpose other than that of bringing an offender to justice." State Life Ins. Co. of Indianapolis, Ind. v. Hardy, 189 Miss. 266, 195 So. 708 (1940). In order to have probable cause for criminal prosecution, the prosecutor must have "(1) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief." Harvill v. Tabor, supra, at 865.
While the actual words are not used, even the appellant agrees that the definitions of these terms are set out in a clear, specific and accurate manner. While it would probably be error to use the terms without proper definitions for the jury, the converse of that is not necessarily true. The purpose of the instruction is to clearly and accurately instruct the jury and this does not necessarily require the use of any "magic word".
The jury instructions must be read as a whole to determine whether the jury was correctly instructed. Jackson v. Griffin, 390 So.2d 287 (Miss. 1980), Estate of Lawler v. Weston, 451 So.2d 739 (Miss. 1984). Furthermore, the courts need not grant duplicitous instructions. Allen v. Blanks, 384 So.2d 63 (Miss. 1980).
Under the foregoing rules it would appear that the jury was properly instructed on the elements necessary to establish malicious prosecution.
ASSIGNMENT OF ERROR NO. III
The trial court erred in denying the Motion for Judgment Notwithstanding *1044 the Verdict or in the Alternative for New Trial on the grounds that the jury verdict of $85,000 was so excessive as to be the result of bias, passion and prejudice on the part of the jury and contrary to the overwhelming weight of credible evidence.
The appellee presented evidence of loss of profits in his private corporation, possible loss of job opportunity, resulting from receipt of the reprimand letter, and mental distress resulting from the embarrassment and loss of reputation. While not assigned as error, the Court notes that damages for loss of profit of Tucker Electric, a separate corporate entity, were claimed by appellee in his individual capacity. However, appellee cannot pierce his own corporate veil at his convenience simply because he is the sole shareholder.
An appraisal of the relevant facts show that the behavior of the parties in the initial encounter from which this suit stems is in dispute. Tucker required no medical attention, testimony by appellee's witnesses showed that any doubt or suspicions they entertained were only momentary; the appellee's personal income increased during that period rather than decreased; the letter of reprimand was precipitated by the fact that he did, indeed, stop to conduct private business on company time and was not a result necessarily of the prosecution; and furthermore, Tucker was never arrested or jailed, but picked up the necessary documents at his convenience.
There is no evidence to show that appellee suffered any substantial physical, mental or economic damages as a result of the prosecution.
While the jury determined that sufficient grounds for liability was established, we are of the opinion that the amount of damages awarded ($85,000) was excessive and contrary to the overwhelming weight of the credible evidence.
Therefore, in accord with Mississippi Code Annotated, Section 11-1-55 (1972), we affirm as to liability and reverse and remand for new trial on the issue of damages.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P. JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.