524 So.2d 331 (1988)
Ruby WELFORD, Maylean Welford Pridgen, and Herman Pridgen
v.
James DICKERSON, et al.
No. 57594.
Supreme Court of Mississippi.
April 27, 1988.
*332 Darryl A. Hurt, Hurt & Hurt, Lucedale, for appellants.
A. Malcolm N. Murphy, Lucedale, for appellees.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
From an award of attorney's fees to the Dickerson family in a slander of title action brought in chancery court of Greene County, Mrs. Ruby Welford and Herman and Maylean Pridgen appeal, asserting that attorney's fees are not an element of damages in a slander of title action. From an award in favor of James Dickerson for damages resulting from malicious prosecution, Herman Pridgen appeals, asserting that Dickerson failed to prove any damages resulting from the malicious prosecution.
Applying the law that attorney's fees are recoverable in a slander of title action, we affirm as to the first error assigned. Finding that Dickerson did offer proof of damages, we affirm as to the second assignment of error.

FACTS
In 1908 Tom Dickerson, a partner with W.C. Welford in the lumber business, conveyed approximately one and one-half acres to the Winborn Chapel United Methodist Church in Greene County for a church and cemetery. The church erected a fence *333 around the cemetery portion of the land. Later, Israel Dickerson owned the land surrounding the church property and left it to his children.
Beginning in 1939, James Dickerson, a son of Israel Dickerson, was elected caretaker of the cemetery and served continuously as such until the trial of this case. He was also a trustee of the church. Sometime after the church erected the first fence around its cemetery, a county road was constructed at an angle to the church property line. James Dickerson, a tenant in common in the Dickerson land, voted with the remaining trustees to "square" the cemetery fence so that the fence would run parallel with the road. The trustees obtained permission from the other owners of the Dickerson property, namely Vivian D. Brown, Mildred D. Eubanks, Cecil Dickerson, Guy Dickerson, Mary Ellen D. Barrow, Iris Dean Mathis, Kate Dickerson, Allie Jean D. Breeden and Marvin Dickerson, and then erected a fence. In doing this a triangular plot belonging to the Dickersons was brought within the cemetery fence. This plot remained Dickerson property for burial of the Dickerson family members. The Dickersons did, however, upon a few occasions, permit others to bury their kin on this Dickerson burial land within the fence.
In 1954 Herman and Maylean Pridgen buried their infant daughter on the Dickerson burial property, without first obtaining consent from any of the Dickersons. Maylean is the daughter of Ed Welford. When the Dickersons learned of this, they objected, but relented upon the condition that no other members of the Weldrod and Pridgen family be buried upon their property because it was reserved for deceased members of the Dickerson family.
In 1970 and 1971, Allie Jean Dickerson Breeden became the sole owner of the 40 acres hereinafter referred to as Dickerson's land.
On December 6, 1982, Ed Welford died. On December 8 his funeral was held at Winborn Chapel and his family attempted to bury his body in a grave beside that of the Pridgen's baby, though James Dickerson's sister, Mildred Eubanks, had informed the family earlier that morning as the grave was being dug that the Dickersons would not allow Mr. Welford's body to be buried at that spot. After the funeral services James Dickerson prevented Mrs. Welford's and the Pridgens' attempt to bury Ed Welford's body in the grave that had been dug on Dickerson's land. A quarrel between James Dickerson and Herman Pridgen achieved the selection of another site for the grave. Mrs. Welford chose a plot in the church cemetery beside the graves of her parents.
On December 9, 1982, Mr. Pridgen swore out an affidavit on which the justice of the peace issued a warrant for the arrest of James Dickerson on the charges of disturbing the peace and threatening to do bodily harm to Mr. Pridgen. The sheriff arrested James Dickerson and Dickerson posted bond. On January 8, 1983, the justice of the peace found Dickerson not guilty.
On January 14, 1983, Mrs. Welford and Mrs. Pridgen petitioned the chancellor for permission to exhume the body of Ed Welford. The petition stated their desire to rebury the body at a different location in the same cemetery "in the family plot." Accompanying the petition was a cover letter from their attorney stating, "This matter is Ex Parte, and no service of process will be required." On February 8, 1983, the chancery court entered a decree authorizing exhumation. Mrs. Welford and the Pridgens spent $300 to have Mr. Welford's body exhumed and reburied at the spot originally chosen for his grave  next to the grave of the Pridgen baby on the Dickerson plot. Beside her deceased husband's headstone, Mrs. Welford also placed a headstone for herself.
On March 7, 1983, Mrs. Welford and Mrs. Pridgen filed suit in circuit court against the Dickersons seeking to recover the cost of exhuming and reburying the body and seeking to recover $250,000 for the emotional distress inflicted by Dickerson at the funeral. This complaint also stated that the grave site originally chosen by Mrs. Welford and the Pridgens was their "family plot."
*334 On July 27, 1983, the Dickersons filed an action seeking an injunction requiring Mrs. Welford and the Pridgens to remove Ed Welford's body from its grave on the Dickersons' land. One count of the petition sought damages for slander of title. Dickerson also brought suit against Herman Pridgen for malicious prosecution. Mrs. Welford's suit was transferred to the chancery court of Greene County and consolidated with the action filed by the Dickersons. The first phase of a bifurcated trial was held on September 11, 1984.
After examining the deeds that formed the chain of title, the chancellor confirmed title in the Dickersons to the land where the body was buried and enjoined Mrs. Welford and the Pridgens to remove the body. The chancellor found that the objection raised the morning of the funeral and the objection raised during the attempted burial left no doubt that the Dickersons claimed to own the land.
On April 11, 1985, the second phase of the trial was heard. As proof of damages suffered from the slander of title, the Dickersons presented their attorney's time sheet, the attorney's statement of fees charged, and testified to the fees charged by a surveyor for surveying the land. The statement of fees and expenses and the itemized time sheets showed attorney's fees of $7,510.80. The surveying cost was $685. The chancellor awarded $9,995.80 as damages for slander of title. Mrs. Welford and the Pridgens objected to the admission of attorney's and surveyor's fees on the grounds that fees were not an element of damages. The objection was overruled and the defendants registered a continuing objection. The chancellor's award of attorney's fees is the first error assigned.
As to the cause of action based on malicious prosecution, Dickerson testified that being arrested and posting bond made him feel like a criminal and got him "into such a fix that I couldn't do my work like I ought ... it caused me to make some bad mistakes." His wife and his brother-in-law testified that Dickerson had lost interest and become uninvolved. Dickerson claimed that the church people looked down their noses at him because he had been arrested.
The chancellor awarded $3,000.00 as damages for malicious prosecution. Pridgen argued to the chancellor that Dickerson had shown no injury to reputation, no medical bills, and no loss of income, employment, property or church office. This award is the second error assigned.

LAW
The conduct of burying Mr. Welford's body on Dickerson's land constitutes the statement slandering Dickerson's title. Slander of title "may consist of ... conduct which bring[s] or tend[s] to bring in question the right or title of another to particular property." Walley v. Hunt, 212 Miss. 294, 304, 54 So.2d 393 (1951).
The petition for permission to exhume asserted that the site proposed for reburial was the Welford's and Pridgens' "family plot." Since this petition was filed Ex Parte without notifying the Dickersons of the intent to bury on the disputed land and without informing the chancellor of the dispute, the petition was not published in due course of a judicial proceeding and, therefore, did not enjoy the privilege enjoyed by the lis pendens notices in Dethlefs v. Beau Maison Development Corp., 511 So.2d 112 (Miss. 1987). The petition supplies a second statement potentially constituting slander of title.
"In order for the statement to form the basis of a right of action it must have been made, not only falsely but maliciously." Walley, 212 Miss. at 305, 54 So.2d 393. The chancellor found that Mrs. Welford and the Pridgens knew their claim to Dickerson's land to be false and made it with malice. The ex parte petition and burial of Mr. Welford's body without Dickerson's knowledge reflects a lack of good faith. Good faith "requires that any person," in the face of a dispute, "will take reasonable steps under the circumstances of the case to determine that he has ... lawful authority" to bury on the plot in question. Grisham v. Hinton, 490 So.2d 1201, 1204 (Miss. 1986). "Due and proper *335 regard for the property of another requires of any person, before he engages in the deliberate act" of burying a body on land claimed by another, "to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so." Id., at 1205.
Since Mrs. Welford and the Pridgens were more heedless than cautious, there was an absence of good faith which, under Perrien v. Mapp, 374 So.2d 794 (Miss. 1979), would have exempted Mrs. Welford and the Pridgens from an award against them of attorney's fees authorized by Phelps v. Clinkscales, 247 So.2d 819 (Miss. 1971). The Dickersons amended their complaint to request an award of attorney's fees against the defendants and the chancellor's award thereof was not contrary to law. There was evidence of malice to support a finding of slander of title and to rule out the good faith exception to the recoverability of attorney's fees.
The $3,000 award against Mr. Pridgen for malicious prosecution was justified in spite of the meager proof of special damages suffered by James Dickerson, for "[w]ithout proof of special damages, a plaintiff ... may recover `damages for (a) the harm to his reputation which normally results from such an accusation as that brought against him, and (b) the distress which normally results from the initiation of such proceedings.' IV Rest. Torts, § 670." State Life Ins. Co. of Indianapolis, Ind. v. Hardy, 189 Miss. 266, 280, 195 So. 708 (1940). The $3,000 award is in line with the judgment allowed to stand in Gandy v. Palmer, 258 Miss. 398, 169 So.2d 819 (1964), and well below the judgments held to be excessive in Woolfolk v. Tucker, 485 So.2d 1039 (Miss. 1986), and Gaylord's of Meridian, Inc., v. Sicard, 384 So.2d 1042 (Miss. 1980).
Finding no reversible error, the decree is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.