CARLTON, J.,
dissenting:
¶30. I respectfully dissent from the majority’s decision to affirm the chancellor’s judgment dismissing Lee McGriggs’s petition to exhume or disinter the body of Alfred McGriggs. The chancellor failed to consider the Hood factors in determinating whether Alfred’s body should be removed and reintered; as a result, I would reverse and remand the chancellor’s judgment.
¶ 31. Lee filed the petition to exhume or disinter Alfred’s body from the Sampson McGriggs estate in Claiborne County and relocate it.[5] Lee’s petition to exhume argued that his siblings, Mac Arthur McGriggs and Lenora McGriggs Wilkes, placed Alfred’s body on the estate on January 25, 2014, in violation of Mississippi Code Annotated section 41-43-1(2) (Rev. 2013), and the petition sought protection of the property rights of all the heirs and descendants of the Sampson McGriggs estate. Lee also provided in his petition that he and Bessie Ola McGriggs Dorsey paid the taxes on the estate. After a hearing on the motion, the Claiborne County Chancery Court denied the petition to exhume the body. Lee now appeals. After reviewing the record, I submit that the chancellor abused his discretion in failing to consider the factors set forth by the Mississippi Supreme Court in Hood v. Spratt, 357 So.2d 135, 136-37 (Miss.1978), to determine if compelling reasons support Lee’s request for relief or disinterment. As a result, I would reverse and remand for proceedings consistent with this opinion.
¶32. This appeal addresses whether the chancellor erred in failing to grant Lee’s petition to exhume his brother Alfred’s body from his burial site on their parents' estate. Lee and Alfred’s parents, Sampson and Lenora McGriggs, had thirteen children and owned a sixty-two-acre farm. Sampson, Lenora, and two of their children, all of whom predeceased Alfred, were buried in the Seven Star Cemetery in Claiborne County.[6] Alfred died on January 22, 2014, and two of his surviving siblings, Mac McGriggs and Lenora *357 Wilkes, buried Alfred on their parents’ sixty-two-acre estate (which this separate opinion refers. to as the Sampson McGriggs estate) in Claiborne-County.
¶ 33. The record reflects that Mac and Lenora Wilkes sought no approval from the Claiborne County Board of Supervisors or other siblings prior to burying Alfred on the family’s estate. Both parties represent that they own the property, along with a total of thirty-six heirs.[7] However, the record reflects no declaration of heirs in any intestate proceeding. No portion of the farm was designated as a cemetery, by deed or otherwise. The record reflects that the land is still used as a farm, and cattle still. graze on the land. The record also shows that Seven Star Cemetery is available for the relocation and reinterment of Alfred, and others in the McGriggs family.
¶34. Lee filed a pro se petition in chancery court to exhume Alfred’s body from the Sampson McGriggs estate and relocate it, and to protect the property rights of the heirs and descendants. The record reflects that the following family members and asserted heirs sent letters to the chancellor also opposing Alfred’s burial on the family estate: Hattie McGriggs Jones, Alfred’s sister; Kenneth McGriggs, Alfred’s son; Karla McGriggs, Alfred’s daughter; and Frieda McGriggs, Alfred’s widow. The record reflects that these family members and heirs were not consulted with prior to the burial of Alfred on the Sampson McGriggs estate.
¶ 35. At the hearing on Lee’s petition to exhume Alfred’s body, the following family members and asserted heirs testified before the chancellor that Alfred wished to be buried on the family estate: Mac McGriggs; Lenora Wilkes; Frank McGriggs, Alfred’s brother; David McGriggs, Alfred’s brother; and Mary McGriggs Moore, Alfred’s sister. The chancellor ultimately denied Lee’s petition, finding section 41-43-1 inapplicable and also finding that Mac and Lenora Wilkes were not required to seek the board of supervisors’ approval prior to burying Albert on the family’s estate. However, the chancellor failed to address Lee’s requests to protect the property rights of the heirs and descendants.
¶ 36. When reviewing a chancellor’s findings, this Court will not disturb those findings when supported by substantial credible evidence unless he abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. In re Spiers, 992 So.2d 1125, 1128 (¶ 10) (Miss.2008); see also Lenoir v. Anderson, 12 So.3d 589, 592-93 (¶¶6-7) (Miss.Ct.App.2009) (addressing whether the chancellor erred in adjudicating the rights of the parties relative tó a private family cemetery created by the testator and conveyed under a cemetery deed).
¶ 37. In Hood, 357 So.2d at 136-37, the Mississippi Supreme Court discussed the factors to be considered by the lower court when permitting the disinterment and removal of a body. The Hood court expressed “that removal and reinterment of a body is allowable where there are compelling reasons.” Id. at 137. ' The supreme court further explained that “no rigid rule [exists] for either permitting or refusing the removal of a body once interred[,]” and stated that “each case must be determined on its own merits with due regard to public welfare, the wishes of the decedent and the rights and feelings of *358 those entitled to be heard by reason of relationship1 or association.” Id. The supreme court then discussed the factors to be considered by the lower court in its discretion in determining whether or not a body should be removed. Id. (citing Pettigrew v. Pettigrew, 207 Pa. 313, 56 A. 878 (1904)). First, the “surviving spouse ha[s] the paramount right to designate the burial site and, if the parties were living in normal marital relations, a very, strong case would be required to justify judicial interference with the survivor’s wish.” Id, Next, if no surviving spouse exists, “the next of kin[,] in order of their relation to the decedent,” have the right to select a burial site. The court provided the condition that “the rights of more distant kin might be modified by circumstances of special intimacy or association with the decedent.” Id. The third factor is considering “to what extent the desires of the decedent as to place of burial should prevail against those of the surviving spouse.” Id. The court explained that this factor “was left' an open question, but as against the remoter connections, such wishes, especially if strongly and recently expressed, would usually prevail.” Id.; see also Spiers, 992 So.2d at 1128 (¶ 12) (applying factors set forth in Hood and finding that a compelling reason supported the removal of a body).
¶ 38. In Hood, 357 So.2d at 136-37, the supreme court “adopted the ‘more compassionate approach’ to ... [consideration of] the removal and reinterment of a body when ‘compelling reasons’ are presented for doing so.” Spiers, 992 So.2d at 1128 (¶ 12); see also Davis v. True, 963 So.2d 1271, 1273 (¶ 10) (Miss.Ct.App.2007) (acknowledging the approach and factors set forth in Hood that must be considered in determining whether or not a body must be moved). In sum, this Court must review the chancellor’s decision and judgment to determine if substantial credible evidence supports a finding’ that no compelling reasons support disinterment. This Court must also determine whether the chancellor was- manifestly wrong or applied an erroneous legal standard,
¶39. Lee argues that the chancellor erred in denying his petition to exhume Alfred’s body. Lee asserts that Mac and Lenora Wilkes violated the state’s statutory cemetery laws by burying Alfred on the Samson McGriggs estate. Furthermore, Lee argues that Mac and Lenora Wilkes are not the sole owners of the Sampson McGriggs estate, ahd thus cannot make decisions of this magnitude. ’ The permission of the board of supervisors was not required to bury Alfred on private property. However, “[d]ue and proper regard for the property of another requires of any person, before he engages in the deliberate act of burying a body on land claimed by another, to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so,” Welford v. Dickerson, 524 So.2d 331, 334-35 (Miss.1988) (citing Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss.1986)) (internal quotation marks omitted).
¶40. In his order denying Lee’s petition, the chancellor explained that section 41-43-1 provides that a person would need to seek approval from the county board of supervisors only if the person attempted to establish a cemetery within five hundred yards of a medical facility. The chancellor further clarified that the statute “does not state that an individual must seek approval from the board of supervisors if they intend to bury someone on private property[,]” and explained that the statute “does not serve as a directive to anyone intending to bury a body on private property.” In finding section 41-43-1 inapplicable, the chancellor did. not determine whether, based on the evidence presented, compel *359 ling reasons existed for disinterment, as required by Hood, 357 So.2d at 137; see also Spiers, 992 So.2d at 1128 (¶ 12), In so doing, I submit that the chancellor failed to address Lee’s'request in his petition for relief to protect the property rights of the heirs and descendants at issue.[8]
¶41. However, Mississippi law recognizes that the conduct of burying a body on private land without the landowner’s permission “constitutes [a] statement slandering ... title. Slander of title may consist of conduct which brings or tends to bring in question the right or title of another to particular property.” Welford, 524 So.2d at 334. The record reflects that the Sampson McGriggs estate heirs were not consulted prior to Mac and Lenora Wilkes burying Alfred on the estate property. The record also shows evidence that many heirs objected.
¶42. In Spiers, the Mississippi Supreme Court recognized that although “Mississippi has no precedent directly on point, ... it is not unprecedented to allow disinterment of a body so that those closest in kinship to the deceased can more easily visit the grave.” Spiers, 992 So.2d at 1130 (¶ 20) (citing Bradley v. Burgis, 25 So.2d 753 (La.Ct.App.1946) (widow allowed to disinter and move husband’s body because it had become impossible for her to visit his grave without being confronted with hostility); Mallen v. Mallen, 520 S.W.2d 736 (Tenn.Ct.App.1974) (disinterment and relocation of husband’s body from family plot allowed due to hostility between husband’s family and widow)). The Mississippi Supreme Court in Spiers considered the Hood factors, ad- established in Hood, 357 So.2d at 137, and the totality of the circumstances in finding that the chancellor’s decision was not supported by substantial credible evidence. Spiers, 992 So.2d at 1130 (¶21). The supreme court, in Spiers, specifically found that the Hood factors weighed heavily in favor of disinterment and relocation of the body where there was no consent to the first burial and also based on the right to be heard by reason of the relationship',[9] Id.
¶43. In this case; the chancellor'failed to consider the Hood factors in determi- *360 nating whether Alfred’s body should be removed and reintered;[10] therefore, I would reverse and remand the chancellor’s judgment. Accordingly, I respectfully dissent.

. Lee appeals pro se.

. Sampson died in 1994, and Lenora died in 1999.

. Lee submits that there are thirty-six “living heirs and descendants" to the Sampson McGriggs estate. Sampson and Lenora McGriggs had thirteen children. I note that Lee’s brief asserts that Mac and Lenora Wilkes do not own the farm, and are only heirs. ' ’ '

. The record reflect that Sampson and Lenora McGriggs acquired the properly at issue, in 1948. As stated previously, Sampson died in 1994 and Lenora died in 1999. See In re Estate of McCullough, 32 So.3d 403, 407-11 (¶¶ 11-25) (Miss.2010) (intestate adjudication of heirs); In re Heirship of McLeod, 506 So.2d 289, 292-93 (Miss. 1987); In re Estate of Kidd, 435 So.2d 632, 634 (Miss. 1983) (In accordance with Mississippi Code Annotated section 15-1-49 (Rev.2012), a six-year statute of limitations applies to heirship determinations once a cause of action accrues.); Miss.Code Ann. § 91-1-29 (Rev.2013) (A petition to determine heirs shall proceed as any other cause in chancery court; all putative heirs shall be cited to appear.). See also Miss.Code Ann. § 91-1-15 (Rev.2013) (time-bar in establishing paternity); Walker v. Matthews, 191 Miss. 489, 3 So.2d 820, 825 (1941) (in suit for determination of heirs, evidence showed individual was not legitimate son of intestate).

. In Mississippi Chancery Practice § 44:10 (2015), James Shelson explained:
The chancellor should consider the following factors in determining whether to permit a body to be moved after it has. been interred, and not merely whether the surviving spouse has a compelling reason for the reinterment:
(1) the public interest;
(2) wishes of the decedent, especially if strongly and recently expressed;
(3) rights and' feelings of those entitled to be heard by reason of relationship;
(4) rights and principles of religious bodies or other organizations that granted interment in the first burial site;
(5) whether consent was given to internment in the first burial site by the one claiming the right of removal.
Where a court is faced with the competing interest of the biological-parents of a deceased child, it should consider these factors, but each case must be determined on its own merits.

. "Courts of equity concern themselves with civil rights as well as property rights.” Smith v. State, 242 So.2d 692, 694 (Miss. 1970).