242 So.2d 692 (1970)
Mrs. Arthur G. SMITH
v.
STATE of Mississippi and State Board of Education of the State of Mississippi.
No. 46058.
Supreme Court of Mississippi.
December 21, 1970.
*693 Burgin, Gholson, Hicks & Nichols, Columbus, for appellant.
A.F. Summer, Atty. Gen., by Maurice R. Black, Asst. Atty. Gen., Jackson, for appellees.
INZER, Justice:
This case involves two questions. The first is whether the amended bill of complaint filed by appellant in the Chancery Court of the First Judicial District of Hinds County states a cause of action and raises a justiciable issue. The second is whether Sections 6798 and 6799, Mississippi Code 1942 Annotated (1952), commonly referred to as anti-evolution statutes, are in contravention to the First Amendment to the Constitution of the United States. We hold that the amended bill of complaint does state a cause of action and that Sections 6798 and 6799 are in contravention of the First Amendment to the Constitution of the United States and are, therefore, unconstitutional.
Mrs. Arthur G. Smith, individually and as next friend of her minor daughter, Frances Owen Smith, brought suit in the Chancery Court of the First Judicial District of Hinds County seeking an injunction to enjoin the State of Mississippi and the State Board of Education from enforcing Sections 6798 and 6799. The trial court sustained a general demurrer to amended bill of complaint and entered a decree dismissing the bill of complaint. Hence this appeal.
The bill of complaint as amended alleged that Frances Own Smith, is now and has been enrolled in the public schools of this state and because of the enactment by the legislature of Sections 6798 and 6799,[1] the *694 meaning of which is to absolutely prohibit the teaching of any theory or doctrine of descent or ascent of man from a lower order of animals that she and other children in the public school systems of this state are being deprived of the full, proper and scientific education because numerous teachers, who have been charged with scientific education of the minor have refused and failed to teach the portions of scientific curricula devoted to the theory that man and other species of animals have evolved from simpler animal forms. The bill of complaint also alleged that this refusal or failure has been fostered by the prohibition and penalties of these statutes. That Frances Owen Smith seeks to obtain a higher education with particular reference to scientific studies and because of these statutes she has been and is now being deprived of the opportunity to gain a basic educational foundation from which she can receive the necessary technical, scientific training required to engage in the profession or business which depends upon scientific knowledge of anthropology and related subjects. It is also charged that she is being further damaged because of these statutes for the reason that she cannot compete with other high school students from other parts of the United States for admission to colleges and universities requiring admission examinations containing scientific questions.
The bill of complaint further charged that the statutes violate the prohibition of the First Amendment of the Constitution of the United States prohibiting laws with respect to the establishment of religion or prohibiting the free exercise thereof. It is alleged that the purpose and intent of these statutes is to establish a religious doctrine in the school systems of the State of Mississippi by prohibiting the teaching as a theory or fact any scientific hypothesis believed to be contrary to the literal interpretation of the Book of Genesis and the Judeo-Christian religious doctrine. In support of this allegation there is attached as exhibits to the amended bill of complaint numerous newspaper reports as to what transpired in the legislature at the time the legislature was considering the passage of these laws.
The amended bill of complaint also charges by virtue of these statutes that the minor complainant has been, is now, and will continue to be deprived of her constitutional right to learn the prohibited scientific theories and that she has been and is now suffering irreparable damage and that she has no adequate remedy at law.
The prayer of the bill of complaint is that the court adjudicate the statute unconstitutional and that the defendants be permanently enjoined from enforcing the statutes.
The State of Mississippi and the State Board of Education interposed separate demurrers to the bill of complaint. The chancellor sustained the demurrers on two grounds: (1) that the bill of complaint did not state a cause of action because it did not charge that the defendants were making any effort to, or threatening, to enforce these laws; (2) that the laws were not unconstitutional as interpreted by the chancellor.
In deciding whether the amended bill of complaint in this case states a cause of action, it must be kept in mind that the demurrer admits as true all facts well pleaded in the bill of complaint. When we examine the bill of complaint in this light we are of the opinion that it does state a cause of action against the State Board of Education.
Courts of equity concern themselves with civil rights as well as property rights. The general principles upon which injunction will issue is well stated in Griffith, Mississippi Chancery Practice § 435 (2d ed. 1950), which is as follows:
The general principles upon which injunction will issue.  In view of the constant growth of new rights as civilization advances, the courts do not attempt to specify, by way of exact limitation, *695 the particular cases wherein, and wherein only, the injunction will issue. The general principle, however, is stated as follows: Courts of equity concern themselves only with matters of property and with the maintenance of civil rights, and do not interfere with issues that are purely personal, or political, or with crimes; but with these aside, then within the whole range of rights and duties, so far as the same are of civil or property rights, wherever a right exists or is created, whether by the ownership of property, or by contract, or however it may arise or exist, if it be one cognizable by law, a definitely threatened or continuing violation of that right will be prohibited by injunction, and in cases of extreme necessity will be protected by a restorative or mandatory injunction: Provided, that there is no full, adequate, and complete remedy at law, and relief by injunction is practicable and can be practicably and efficiently enforced.
While we do not have a declaratory judgment act, we have held in several cases that an injunction is a proper remedy to declare void city ordinances and it likewise, is a proper remedy to declare void a state statute. In Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190 (1923), this Court said:
A demurrer was interposed by the city and sustained by the chancellor. The appellants declined to amend, the bill was dismissed, and this appeal here prosecuted by complainant.
It is first insisted by the appellee that appellant's remedy was by mandamus and not by bill in chancery. The bill in this case seeks to have declared void this city ordinance because it is not within the police power of the city to enact it; that this void ordinance interferes with the lawful proper use of his lot and proposed building.
While there are some authorities to the contrary, the great weight of authority and the better reasoned cases hold that, where a municipal ordinance is void and its provisions are about to be enforced, or are being enforced, any person who is injuriously affected thereby either in his person or the use of his property may go into a court of equity to have the enforcement of the ordinance stayed by injunction. New Orleans Baseball & Amusement Co. v. City of New Orleans, 118 La. 228, 42 South 784, 7 L.R.A. (N.S.), 1014, 118 Am.St. Rep. 366. (Emphasis added) (132 Miss. at 603, 97 So. at 191).
In Brooks v. City of Jackson, 211 Miss. 246, 51 So.2d 274 (1951), we said:
In view of the conclusions which we have reached, we address this opinion only to the question raised as to the validity of the ordinance, since, if the ordinance is void and its provisions are about to be or are being enforced, and appellants are injuriously affected thereby, either in person or in the use of their property, they are entitled in a court of equity to have the enforcement of the ordinance enjoined. Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190, 33 A.L.R. 279. (211 Miss. at 252, 51 So.2d at 276).
In the Town of McCool v. Blaine, 194 Miss. 221, 11 So.2d 801 (1943), we quoted the following statement from Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887):
"If * * * a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution." (194 Miss. at 225, 11 So 2d at 802) (Emphasis added).
While these cases involve property rights, civil rights or personal rights are no less valuable and courts of equity will lend their aid to protect those rights when *696 they are being or about to be denied. Here appellant has alleged that she has been, and continues to be denied the right to learn by reason of these statutes. We are of the opinion and so hold that the bill of complaint in this case states a cause of action for injunctive relief against the State Board of Education.
The second question to be decided is whether the statutes in question are in violation of the First Amendment of the Constitution of the United States made applicable to the states through the Fourteenth Amendment. In determining this question we are constrained to follow the decisions of the Supreme Court of the United States wherein that Court has construed similar statutes involving the First Amendment to the Constituton of the United States. In the recent case of Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), the Supreme Court of the United States held that the Arkansas statutes forbidding the teaching of evolution in public schools and colleges and universities supported in whole or part by public funds were contrary to the freedom of religion mandate of the First Amendment and in violation of the Fourteenth Amendment. In this case Susan Epperson, a teacher of tenth grade biology at Central High School brought suit in a chancery court of the state seeking a declaration that the Arkansas statute was void and to enjoin the school system from dismissing her for violation of the provisions of the statute. The chancery court held that the challenged statutes were unconstitutional for the reason that they violated the Fourteenth Amendment of the Constitution of the United States which encompassed the prohibition upon state interference upon freedom of speech and thought which are contained in the First Amendment.
The Supreme Court of Arkansas in a per curiam decision held that the challenged statute was a valid exercise in the state's power to specify the curriculum in its public schools. The court declined to express an opinion on whether the statute prohibited any explanation of the theory of evolution or merely prohibited the teaching thereof as being true.
Upon appeal to the Supreme Court of the United States, that court in the majority opinion pointed out that only Arkansas and Mississippi had such anti-evolution statutes on their books, since Tennessee and Oklahoma had repealed their anti-evolution laws. Appellant argued that the challenged statute was vague and uncertain and therefore in condemnation of the due process clause of the Fourteenth Amendment. The state of Arkansas argued that the statute was not vague for the reason it prohibited the teaching of evolution either as a theory or fact. The court held that it did not matter whether the statute prohibited the teaching of evolution as a fact or as a theory and in this regard said:
In any event, we do not rest our decision upon the asserted vagueness of the statute. On either interpretation of its language, Arkansas' statute cannot stand. It is of no moment whether the law is deemed to prohibit mention of Darwin's theory, or to forbid any or all of the infinite varieties of communication embraced within the term "teaching." Under either interpretation, the law must be stricken because of its conflict with the constitutional prohibition of state laws respecting an establishment of religion or prohibiting the free exercise thereof. The overriding fact is that Arkansas' law selects from the body of knowledge a particular segment which it proscribes for the sole reason that it is deemed to conflict with a particular religious doctrine; that is, with a particular interpretation of the Book of Genesis by a particular religious group. (393 U.S. at 103, 89 S.Ct. at 269, 270, 21 L.Ed.2d at 233, 234).
The Court after citing and discussing several antecedent cases in support of its conclusion said:
While study of religions and of the Bible from a literary and historic viewpoint, *697 presented objectively as part of a secular program of education, need not collide with the First Amendment's prohibition, the State may not adopt programs or practices in its public schools or colleges which "aid or oppose" any religion. Id., at 225, 83 S.Ct., at 1573. This prohibition is absolute. It forbids alike the preference of a religious doctrine or the prohibition of theory which is deemed antagonistic to a particular dogma. As Mr. Justice Clark stated in Joseph Burstyn, Inc. v. Wilson, "the state has no legitimate interest in protecting any or all religions from views distasteful to them * * *." 343 U.S. 495, 505, 72 S.Ct. 777, 782, 96 L.Ed. 1098 (1952). The test was stated as follows in Abington School District v. Schempp, supra, 374 U.S. at 222, 83 S.Ct. at 1571: "[W]hat are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the Constitution."
These precedents inevitably determine the result in the present case. The State's undoubted right to prescribe the curriculum for its public schools does not carry with it the right to prohibit, on pain of criminal penalty, the teaching of a scientific theory or doctrine where that prohibition is based upon reasons that violate the First Amendment. It is much too late to argue that the State may impose upon the teachers in its schools any conditions that it chooses, however, restrictive they may be of constitutional guarantees. Keyishian v. Board of Regents, 385 U.S. 589, 605-606, 87 S.Ct. 675, 684-685, 17 L.Ed.2d 629 [641-642] (1967). (393 U.S. at 106, 107, 89 S.Ct. at 271, 272, 21 L.Ed.2d at 236).
Apparently the court had no difficulty in determining that the purpose of the Arkansas statute was to prevent its teachers from teaching the theory of evolution because it is contrary to the belief of some that the Book of Genesis must be the exclusive source of the doctrine as to the origin of man. The court said:
Its antecedent, Tennessee's "monkey law," candidly stated its purpose: to make it unlawful "to teach any theory that denies the store of the Divine Creation of man as taught in the Bible, and to teach instead that man has descended from a lower order of animals." Perhaps the sensational publicity attendant upon the Scopes [Scopes v. State, 154 Tenn. 105, 289 S.W. 363] trial induced Arkansas to adopt less explicit language. It eliminated Tennessee's reference to "the story of the Divine Creation of man" as taught in the Bible, but there is no doubt that the motivation for the law was the same: to suppress the teaching of a theory which, it was thought, "denied" the divine creation of man. (393 U.S. at 109, 110, 89 S.Ct. at 273, 21 L.Ed.2d at 236, 237).
There can be little doubt, if any, that the court would make the same finding relative to our statute.
In spite of what the Supreme Court said in Epperson, supra, appellees argue that we should uphold the challenged statutes because of the difference in the language in our statute and the Arkansas statute. The only difference insofar as the teaching of evolution is concerned, is that our statute makes the violation to teach that mankind ascended or descended from a lower form of animal. While the Arkansas law made it a violation to teach "the theory or doctrine: that mankind ascended or descended from a lower form of animals. We are unable to see any material difference in the meaning of the two statutes. We are also unable to agree with the learned chancellor that our statute makes it a violation to teach evolution as a fact, and that our statute can be construed to mean that it is permissible to teach it as a theory. However, it is immaterial under the holding of the Supreme Court of the United States whether it can be so construed.
*698 Finally appellees argue that our statute should be upheld because our state laws are such as to make us neutral between religion and religion and between religion and non-religion as required by the First Amendment. It is contended that Section 6216-11, Mississippi Code 1942 Annotated (Supp. 1968), which states:
Doctrinal sectarian or denominational teaching forbidden.  No doctrinal, sectarian or denominated teaching shall be permitted in public schools of this state. It shall be the duty of the county superintendents of education and the superintendents of municipal separate school districts to enforce the provisions of this section.
in effect prohibits the indoctrination of the students that mankind was spontaneously created by God. Appellees say, "Thus, we have complete neutrality. The students may not be indoctrinated either with the idea that mankind evolved from a lower species of animal, nor may they be indoctrinated by the idea that man was created by the spontaneous act of God." It is difficult to believe that appellees are serious in this contention. Whatever Section 6216-11 does mean, it certainly does not mean that the teaching that mankind was spontaneously created by God is prohibited by this statute. We do not have, and should not have, any statute which would prohibit the teaching of the Bible in our public schools. In fact, our Constitution prohibits the enactment of a law prohibiting the use of the Bible in the public schools of this State. Article 3, Section 18, Mississippi Constitution (1890). The use of the Bible in our schools must, of course, be a proper use.
The decisions of the Supreme Court of the United States which interpret the Constitution of the United States are binding upon us and we have no choice other than to follow such decisions. It is clear to us from what was said in Epperson, supra, that the Supreme Court of the United States has for all practical purposes already held that our anti-evolution statutes are unconstitutional. Therefore, we are constrained to hold that Sections 6798 and 6799 are unconstitutional, thus void and of no effect.
We hold that the chancellor was in error in sustaining the demurrer of the State Board of Education to the amended bill of complaint. However, we are of the opinion that the demurrer of the State of Mississippi was well taken for the reason that the sovereignty is not subject to suit in this case without its consent and the bill of complaint fails to allege that it has so consented. We also hold that Section 6798 and 6799 are in contravention to the First Amendment to the Constitution of the United States and are, therefore, void and of no effect.
For the reasons stated, this case is reversed and remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
All Justices concur.
NOTES
[1] § 6798. Schools supported by state not to teach that man ascended or descended from the lower order of animals.  It shall be unlawful for any teacher or other instructor in any university, college, normal, public school or other institution of the state which is supported in whole or in part from public funds derived by state or local taxation to teach that mankind ascended or descended from a lower order of animals and also it shall be unlawful for any teacher, textbook commission or other authority exercising the power to select textbooks for above mentioned educational institutions to adopt or use in any such institution a textbook that teaches the doctrine that mankind ascended or descended from the lower order of animals.

§ 6799. Penalty for violation of law.  Any teacher or other instructor or textbook commissioner who is found guilty of violation of the foregoing section by teaching, using, adopting any such textbooks in any such educational institution shall be guilty of a misdemeanor and upon conviction be fined not exceeding $500.00; and upon conviction shall vacate the position thus held in any educational institution of the character above mentioned or any commission of which he may then be a member.