# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00267-SCT

*IN RE: BODY OF VICTORIA SPIERS AGE 10,
DECEASED: CARMEN D. HASTINGS*

*v.*

*JOEL SCOTT SPIERS*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2007 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWIN WOODS, JR. |
| ATTORNEY FOR APPELLEE: | JAMES M. PRIEST, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/21/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. This case comes before the Court on appeal from the Circuit Court of Adams County. Carmen Hastings petitioned the circuit court to have the body of her daughter, Victoria ("Tori") Spiers, disinterred so that she could be buried in Wichita Falls, Texas, where Tori had lived with Hastings. Joel Spiers, Tori's natural father, objected. The circuit court denied Hastings's petition, and Hastings' appealed to this Court.

## FACTS AND COURSE OF PROCEEDINGS

¶2. Victoria Spiers was born January 4, 1995, in Wichita Falls, Texas. Around five months after Tori's birth, Tori's father, Joel Spiers, contacted Carmen Hastings, Tori's

mother, to let her know that he wanted to be a part of Tori's life.[1] Shortly thereafter, Hastings met Spiers in Texas with Tori for a visit. After the meeting, Hastings returned to Oklahoma with Tori, and Spiers returned home to Mississippi.[2]

¶3. Spiers next contacted Hastings in September 1995, to let Hastings know that Spiers's parents wanted to meet Tori. The Spiers family sent Hastings round-trip tickets to Mississippi so that Hastings and Tori could come for a visit. Hastings came to Mississippi for six weeks so that the Spiers family could meet and spend time with Tori. Hastings and Tori stayed with Hastings's brother in McComb during the visit.

¶4. About a week before Hastings was scheduled to return home from Mississippi, Vickie Spiers, Joel Spiers's mother, informed Hastings that the Spiers family would be suing Hastings for custody of Tori. During her last week in Mississippi, Hastings did not allow the Spiers family to see Tori, but allowed her own family to spend more time with Tori instead. Hastings then returned to Wichita Falls with Tori.

¶5. In 1997, Spiers and Hastings were named Tori's "joint managing conservators" in Texas. The Texas court's order made Hastings Tori's primary custodial parent, giving her the exclusive right to establish legal residence for Tori. From 1997 until 2000, the Spiers family traveled to Wichita falls for visits with Tori. As Tori got older, the Spiers family would sometimes take Tori for extended visits over her spring break, summer vacation, and Christmas break.

---

[1]Hastings and Spiers were never married. At the time of Tori's birth, Hastings resided in Oklahoma, and Spiers resided in Mississippi.

[2]Hastings testified that she was living temporarily in Oklahoma, but she moved permanently to Wichita Falls later in 1995.

¶6.    In July 2005, Tori traveled to Mississippi for one of her extended visits.  One of Hastings's neighbors in Wichita Falls, Bennie, was a pilot and part owner of a private plane. He agreed to fly Hastings to Natchez, Mississippi, on July 30 to pick up Tori.  Bennie was also the grandfather of one of Tori's best friends, Jessie, who accompanied Bennie and Hastings on the flight.  Bennie, Hastings, and Jessie reached Natchez, where Tori was waiting for them.  The four boarded the plane to return to Wichita Falls, and shortly after takeoff, the plane crashed.  Hastings was the only survivor of the crash.  Tori was ten years old.

¶7.    As a result of a dispute between Spiers and Tori's stepfather, Adams County Coroner James Lee sought authorization and directives from the Circuit Court of Adams County as to the release of Tori's remains.  On August 1, the trial court issued an order directing Lee to release Tori's remains to Spiers.  The order stated in part:

> [Tori's] natural mother, one Carmen Hastings, was severely injured in said airplane crash and is presently in critical condition at the University of Mississippi Medical Center in Jackson, Mississippi, and is wholly unable at this time due to her severe injuries and resulting physical and mental condition, to make any decisions as to interment of her daughter's body.

The order went on to say, "[t]his order is further subject to any further or future court proceedings, in the event that the child's natural mother, Carmen Hastings, makes sufficient medical recovery, and desires to seek further legal determination of said child's final resting place."

¶8.    On the date that Tori's funeral and burial were scheduled in Mississippi, Hastings petitioned the circuit court seeking an order to prevent Tori's remains from being buried in Mississippi.  Attached to Hastings's petition was her statement, signed and witnessed, that

3

"despite her physical condition," she was "able to make appropriate decisions and would like [Tori] buried in Texas." A telephonic hearing was held, and the trial court denied Hastings's petition. Tori's funeral proceeded as planned, and her remains were buried at the Bethel Baptist Church Cemetery in Liberty, Mississippi.

¶9.    On December 23, 2005, Hastings filed an amended petition with the trial court, asking that Tori's remains be disinterred and transported to Wichita Falls for burial. The trial court held a hearing on the petition on March 6, 2006, and on that same day, entered an order denying Hastings's request. Hastings appeals the trial court's decision to this Court.

### ANALYSIS

¶10.    This case deals with the most delicate of subject matters. "[A] court of equity can best determine the rights of relatives and friends respecting the care and control of the remains of their dead and decide upon each set of circumstances what is the proper course of action." *Hood v. Spratt*, 357 So. 2d 135, 138 (Miss. 1978)[3]. This Court will not disturb the findings of a chancellor (or circuit judge in this case) when supported by substantial credible evidence unless the judge abused his discretion, was manifestly wrong, was clearly erroneous, or an erroneous legal standard was applied. *Sanderson v. Sanderson*, 824 So. 2d 623, 625 (Miss. 2002).

---

[3]While cases such as this would properly be brought in chancery court, this case originated from the Adams County coroner's petition in the Circuit Court of Adams County. Therefore, the circuit court sat as a court of equity in this matter. *Tyson Breeders, Inc. v. Harrison,* 940 So. 2d 230, 233-34 (Miss. 2006) (recognizing that circuit courts are courts of general jurisdiction that may sometimes hear equity matters).

¶11. The subject matter of this case first arose as a dispute between Spiers and Brian Hastings, Tori's stepfather and Carmen Hastings's husband. The Adams County coroner sought guidance on the matter from the circuit court, and the circuit court ordered the coroner to release Tori's remains to Spiers. Tori's body was buried in Mississippi over Hastings's objections. After recuperating from her injuries, Hastings filed the amended petition seeking to have Tori's remains disinterred and moved to Texas. On appeal, we deal with the trial court's denial of Hastings's amended petition, not the original decision of whether Tori should have been buried in Mississippi or Texas.

¶12. In *Hood*, this Court adopted the "more compassionate approach" to situations such as these, allowing the removal and reinterment of a body when "compelling reasons" are presented for doing so. *Hood*, 357 So. 2d at 136-37. Rules must be followed in considering these cases. Citing the Pennsylvania case of *Pettigrew v. Pettigrew*, 207 Pa. 313, 56 A. 878 (1904), *Hood* stated:

> The first rule was that the surviving spouse had the paramount right to designate the burial site and, if the parties were living in normal marital relations, a very strong case would be required to justify judicial interference with the survivor's wish. Secondly, in the absence of a surviving spouse, the right of selection of a burial site was in the next of kin in order of their relation to the decedent, and the rights of more distant kin might be modified by circumstances of special intimacy or association with the decedent. Thirdly, to what extent the desires of the decedent as to place of burial should prevail against those of the surviving spouse was left an open question, but as against the remoter connections, such wishes, especially if strongly and recently expressed, would usually prevail.

*Hood*, 357 So. 2d at 137. "There is no rigid rule for either permitting or refusing removal of a body once interred and each case must be determined on its own merits with due regard to" five factors: (1) public interest, (2) wishes of the decedent, (3) rights and feelings of those

5

entitled to be heard by reason of relationship, (4) rights and principles of religious bodies or other organizations which granted interment in the first burial site, and (5) whether consent was given to interment in the first burial site by the one claiming the right of removal. *Id.*

¶13. For obvious reasons, most of the cases on the subject of disinterment of human remains, such as *Hood* and *Pettigrew*, involve a surviving spouse. "[I]n the absence of a surviving spouse, the right of selection of a burial site was in the next of kin in order of their relation to the decedent . . . ." *Hood*, 357 So. 2d at 137. Here we are faced with the competing interests of Tori's biological parents, who both share the same degree of relation to Tori. Therefore, we must turn to the trial court's weighing of the *Hood* factors to determine whether denying Hastings's request to disinter Tori's remains and move them to Texas was an abuse of discretion.

¶14. While the trial court found in its written order that "public interest is in not disturbing a grave and against removing a body once it is buried," the trial court found in its bench ruling that public interest was not a factor in this case. Not surprisingly, given her young age, there was no evidence as to Tori's wishes on where she would be buried. There was no evidence that the rights and principles of any religious bodies or other organizations would be affected in this matter. It is also eminently clear that Hastings, Tori's primary custodial parent, did not consent to Tori's burial in Mississippi. Finally, the Court considered the fifth factor, the rights and feelings of those entitled to be heard by reason of relationship.

¶15. Only one voice was heard at the hearing on this case, that of Carmen Hastings. Spiers was not present at the hearing, but he was represented by counsel. The majority of Hastings's testimony described Tori's connection to Wichita Falls, Texas. That testimony

6

is undisputed. Tori was born in Wichita Falls and spent her entire life there. She attended the same school in Wichita Falls from kindergarten through fourth grade, and but for her tragic accident, would have entered the fifth grade at that same school in the fall of 2005. Tori was very active in extracurricular activities at her school, including organizing fund raisers and playing on the volleyball team. She was a popular little girl who loved to spend time with her family and her many friends in Wichita Falls.

¶16. Some of Hastings's testimony also addressed Tori's connection to Spiers. During the early part of Tori's life, Spiers did not spend much time with Tori. While Spiers's parents, Vickie and Jimmy, put forth great effort to visit Tori in Texas, Spiers himself did not visit often. As Tori got older and was able to stay away from home for longer periods of time, she would visit the Spiers family in Mississippi. She eventually began spending around six weeks out of every summer with the Spiers family. Most often, Tori would spend those six weeks with the Spiers family on trips to the mountains in Tennessee. Hastings admitted that Tori loved the Spiers family, including her father, and really enjoyed and looked forward to the time that she spent with them during the summers.

¶17. At the end of her direct testimony, Hastings made a plea to the court saying, "I want my daughter home." She continued by saying that "[h]er friends, her family, everything about Tori is in Wichita Falls." As Hastings was in the hospital at the time of Tori's funeral, she stated, "I didn't get to pick what she was wearing. I didn't get to make those decisions that I should have gotten to make. When it came down to it, I didn't get to make the decision where she was laid to rest. I need her – I need her home."

¶18.    In its written order, the trial court recognized that "had [Hastings] not been severely injured in the airplane crash herself and fighting for her own life at the time of the arrangements for her daughter's burial, she would have surely had her daughter buried in Wichita Falls, Texas."  Though Hastings was severely injured, she still protested Tori's Mississippi burial.  The trial record shows that, after seven and a half hours of reconstructive surgery on her face, a very swollen Hastings managed to hold one eye open so that she could read, sign, and write her social security number on a statement averring that she was competent to make a decision as to Tori's burial and that she wanted her buried in Wichita Falls, Texas.

¶19.    The trial court admitted several times that the only reason Tori was not buried in Wichita Falls was that her mother was injured.  In fact, the trial court did not make any finding at all under the *Hood* factors that would justify denying Hastings's request.  The court said only that "[i]t is fully understandable that Mrs. Hastings would want her child buried close to her home, family and friends.  However, that desire and the comfort and convenience that would bring to Mrs. Hastings and those who dearly loved Tori in Texas does not amount to a compelling reason to grant the relief requested."  We disagree.

¶20.    Mississippi has no precedent directly on point, but it is not unprecedented to allow disinterment of a body so that those closest in kinship to the deceased can more easily visit the grave. *See Mallen v. Mallen*, 520 S.W.2d 736 (Tenn. Ct. App. 1974) (disinterment and relocation of husband's body from family plot allowed due to hostility between husband's family and widow); *see also Bradley v. Burgis*, 25 So. 2d 753 (La. App. 1946) (widow allowed to disinter and move husband's body because it had become impossible for her to

visit his grave without being confronted with hostility). While there is no evidence of any hostility towards Hastings when she has visited Tori's grave, it is obviously difficult for her to visit given the distance between Wichita Falls, Texas, and Liberty, Mississippi. Hastings even testified that "as her mother," it was her place to bring flowers to Tori's grave, and that she was unable to do so, given the situation.

¶21. In *Hood*, this Court made clear that Mississippi adopted "no rigid rule for either permitting or refusing removal of a body once interred." *Hood*, 357 So. 2d at 137. Instead, "each case must be determined on its own merits with due regard" to the factors prescribed for consideration. *Id.* The only two factors from *Hood* that actually apply to this case weigh heavily in favor of Hastings. Hastings did not consent to Tori's burial in Mississippi, and in fact, adamantly opposed that burial. The "right to be heard by reason of relationship" factor also weighs in Hastings's favor as she was the *only* one heard in this matter. Taken together, Hastings's testimony, Tori's connection to Wichita Falls and her lack of any substantial connection to the State of Mississippi, and the trial judge's own repeated admission that Tori would have been buried in Wichita Falls if not for Hastings's serious injuries in the plane crash, all compel a decision that Tori's body be disinterred and moved to Wichita Falls. Considering the totality of the record, we are unable to say that the court's decision was supported by substantial credible evidence. To the contrary, the only evidence in this sad record supports Hastings's petition.

## CONCLUSION

9

¶22. Given the facts of this case and the record before this Court, we cannot find substantial credible evidence to support the trial court's ruling. Therefore, the trial court's denial of Hastings's petition to disinter Tori's remains and move them to Texas is reversed.

¶23. **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**