# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CP-01400-COA

**LEE AUGUSTUS MCGRIGGS, SR.**                                           **APPELLANT**

**v.**

**MAC ARTHUR MCGRIGGS AND LENORA**                          **APPELLEES**
**MCGRIGGS WILKES A/K/A LENORA WILKES**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2014 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LEE AUGUSTUS MCGRIGGS SR. (PRO SE) |
| ATTORNEYS FOR APPELLEES: | MAC ARTHUR MCGRIGGS (PRO SE) LENORA MCGRIGGS WILKES (PRO SE) |
| NATURE OF THE CASE: | CIVIL - OTHER |
| TRIAL COURT DISPOSITION: | DENIED APPELLANT'S PETITION TO EXHUME A BODY |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WILSON, J., FOR THE COURT:**

¶1.     Alfred McGriggs passed away on January 22, 2014, and three days later, his body was buried on his family's land in Claiborne County. The uncontradicted testimony of those close to Alfred was that the location of his burial was precisely in accord with his wishes.

¶2.     One of Alfred's twelve siblings, Lee Augustus McGriggs Sr., objected to Alfred's body being interred on the family land. Lee took this intra-family dispute to chancery court, filing a pro se petition to exhume Alfred's body. Lee's petition named as defendants two of his siblings, MacArthur McGriggs ("Mac") and Lenora McGriggs Wilkes ("Lenora Wilkes").

The petition alleged that Alfred's burial "was a violation of the cemetery laws of the State of Mississippi," and it asked the court to order Alfred's body to be exhumed and moved to the cemetery where the siblings' parents were buried.

¶3. The case proceeded to a trial on the merits where the parties were allowed great leeway to present testimony and evidence. The chancellor found that Alfred's burial did not violate state law and so denied the petition. Because the chancellor ruled correctly and the record discloses absolutely no reason for disturbing Alfred's remains, we affirm.

**FACTS**

¶4. In the 1940s, Sampson McGriggs and his wife Lenora acquired a sixty-two-acre tract of land in Claiborne County. Sampson farmed some or all of the land during his lifetime, and he and Lenora had thirteen children, including Alfred and the litigants in this case. Sampson died in 1994, and Lenora died in 1999. Both were buried at the Seven Star Cemetery in Utica, as was one of their children.

¶5. During Lenora's burial, a dispute or misunderstanding arose. The cemetery claimed that the family owed a $500 fee, and someone parked a bus in the entrance to the cemetery in order to prevent the burial of Lenora's body until the fee was paid. This incident clearly caused some of her children to have hard feelings toward the cemetery.

¶6. Sampson and Lenora were survived by twelve of their children. There was some testimony at trial that a will was drafted for Sampson, but the will was never probated if it was even valid. Nor does it appear that there was ever a judicial determination of heirs. Lee says that there are thirty-six living heirs to the "Sampson McGriggs estate," consisting of the

2

eleven living siblings and twenty-five "second generation heirs." However, there is nothing in the record to support or explain this assertion.

¶7. Alfred McGriggs was born in 1943. He moved away from Mississippi as a young man and worked for General Motors for thirty-four years before retiring in Kansas City around 2006. After Alfred retired, his brother Mac "picked him up in Kansas" and brought him back to Claiborne County, where he lived on or near the family land. About two years later, Alfred moved to Biloxi, where he lived with Mac.

¶8. Mac, Lenora Wilkes, Alfred, their sister Mary McGriggs Moore, and their brothers David McGriggs and Rev. Frank McGriggs took primary responsibility for the upkeep and maintenance of the family property at different times before and after their parents died. This required Lenora Wilkes to travel frequently to Claiborne County from her home near Houston, Texas. Mac and Alfred also regularly drove up from Biloxi to mow and do other chores on the property. Mary purchased a tractor and Mac bought a bush hog for use on the property. Lenora Wilkes, Mac, Alfred, Mary, and other siblings paid taxes and other expenses related to the property at different times over the years.

¶9. Lee, a college professor, lives in Houston, Texas. He acknowledged that he has not assisted with the upkeep or maintenance of the property over the years. In 2013, Lee began paying the property taxes, although he admitted that no one had asked him to do so and that there were no delinquent taxes on the property. At trial, Lee testified that he intended to continue paying the property taxes and would establish some sort of trust that would continue to pay the taxes for "200 years." Lee acknowledged that at the time of Alfred's death, he did

3

not have much of a relationship with his siblings, including Alfred. He did not agree with their "lifestyles" and felt they had brought "dishonor" on their parents.

¶10. Alfred died in Biloxi on January 22, 2014. His body was prepared for burial by a funeral home in Biloxi and then transported back to Claiborne County. On January 25, he was buried near some cedar trees on his family's land. Five of his siblings—Mac, Lenora Wilkes, Mary, Frank, and David—testified that this was where Alfred wanted to be buried. Their testimony regarding Alfred's wishes was uncontradicted.

¶11. On February 10, 2014, Lee filed a pro se "Petition to Exhume the Body of Alfred McGriggs from the Sampson McGriggs Estate." The petition alleged that Alfred's burial on the property "was a violation of the cemetery laws of the State of Mississippi" and purportedly sought "the protection of property rights of all heirs to the Sampson McGriggs Estate." Lee also filed a letter that purported to be from his sister Hattie McGriggs Jones and stated that she "join[ed]" Lee and another sister, Bessie O. McGriggs Dorsey, in asking the court to exhume the body. The letter contains numerous accusations of wrongdoing by the defendants, most of which have absolutely nothing to do with this case. The letter was neither sworn nor notarized,[1] and neither Hattie nor Bessie testified.

¶12. Lee subsequently filed letters that purported to be from Alfred's widow (Frieda McGriggs) and two children in New York. These three letters also purport to join in Lee's

---

[1] "Clearly, a letter is not an affidavit." *Potter v. Hopper*, 907 So. 2d 376, 380 (¶11) (Miss. Ct. App. 2005).

4

petition. The letters are notarized but do not purport to be affidavits and are not sworn.[2] None of these individuals appeared or testified at trial, nor were any of the letters offered or introduced into evidence at trial.

¶13. The court heard testimony on March 11 and June 16, 2014.[3] With the feuding siblings proceeding pro se and cross-examining one another and other family members, the chancellor had his hands full keeping order and avoiding detours into irrelevant family disputes. As a result of the chancellor's admirable patience, some pertinent facts did emerge, including those already noted above.

¶14. Lee claimed that Alfred was still "legally married" to Frieda, but he produced no evidence of the marriage, he admitted that they had been separated for "many years," and he could not remember Frieda's maiden name. Lee's wife admitted that Alfred never heard from Frieda anymore. The defendants denied that Alfred and Frieda were legally married, and all parties agreed that Alfred had a relationship and lived off and on with another woman after he returned to Claiborne County. It also appeared that Alfred had not seen his children in decades. And, again, neither the purported widow nor the children testified at trial.

¶15. As noted above, Lee's petition alleged that Alfred's burial violated state law. In

---

[2] "An affidavit is '[a] written or printed declaration or statement of facts, made voluntarily, *and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation.*'" *Wilcher v. State*, 863 So. 2d 776, 834 (¶209) (Miss. 2003) (quoting Black's Law Dictionary 58 (6th ed. 1990)).

[3] There is no proof of service in the record. The court questioned Mac and Lenora Wilkes about this on March 11. Mac said that he had received the petition by certified mail, which is not valid service on an in-state defendant. *See Triple C Transp. Inc. v. Dickens*, 870 So. 2d 1195, 1198-99 (¶¶21, 26) (Miss. 2004). Lenora Wilkes stated that she had not been served at all. However, both agreed to proceed and waive any issues with service.

particular, Lee allege a violation of Mississippi Code Annotated section 41-43-1(2) (Rev. 2013). At multiple points in the hearing, the chancellor sought to focus the parties' attention by reminding them that the legality of the burial was the sole issue before the court. When he did, no one objected or suggested that there were other relevant issues.

¶16. The court subsequently issued an order denying Lee's petition, and Lee appealed.

## ANALYSIS

¶17. The chancellor correctly rejected Lee's argument that Alfred's burial violated state law. Lee relies on section 41-43-1(2), which provides: "The board of supervisors of any county is authorized and empowered, upon petition and request to do so, to establish or designate the location of any private family cemetery to be located in the county." Lee interprets this provision to mean that it is illegal to inter a body on private property without the authorization of the board of supervisors. Lee is wrong. "Section 41-43-1(2) does not give the board of supervisors the power to prevent the establishment of a private family cemetery; it merely gives the board the authority to establish or designate the location of a private family cemetery when petitioned and requested to do so." Miss. Att'y Gen. Op., 96-0077, 1996 WL 88818, *Shannon* (Feb. 23, 1996).[4] A property owner might want to file such a petition in order to get a property tax exemption. *See* Miss. Code Ann. § 27-31-1(a) (Rev. 2013). However, the interment of a body on private property does not require the permission of the board of supervisors. Accordingly, the chancellor correctly denied Lee's

---

[4] An Attorney General's opinion is not binding but may be persuasive. *Miss. State & Sch. Employees' Life & Health Plan v. KCC Inc.*, 108 So. 3d 932, 938 (¶15) (Miss. 2013). This one is persuasive.

petition.

¶18. The dissent agrees that the burial violated no law but would nonetheless reverse and remand because "the chancellor abused his discretion in failing to consider the factors set forth by the Mississippi Supreme Court in *Hood v. Spratt*, 357 So. 2d 135, 136-37 (Miss. 1978)." The dissent would send the case back to the chancellor for more "proceedings" "to determine if compelling reasons support Lee's request for relief or disinterment." With respect, there is no reason to remand this case for more proceedings.

¶19. To begin with, it is unfair to say that the chancellor "failed" to consider this issue because the parties never raised it below or on appeal. The chancellor made clear that he understood the sole issue in the case to be the legality of the burial, and Lee never objected to that characterization. But even assuming that the *Hood* issue was fairly encompassed within Lee's petition and is now properly before us, there is absolutely no evidence in the record that would warrant disturbing Alfred's remains.

¶20. The *Hood* opinion adopted the following principles as applicable to a petition to exhume a body:

> [T]here [is] a presumption against removal growing stronger with the passage of time and with the remoteness of the connection with the decedent by the one desiring removal. The first rule [is] that the surviving spouse [has] the paramount right to designate the burial site and, if the parties were living in normal marital relations, a very strong case [is] required to justify judicial interference with the survivor's wish. Secondly, in the absence of a surviving spouse, the right of selection of a burial site [is] in the next of kin in order of their relation to the decedent, and the rights of more distant kin might be modified by circumstances of special intimacy or association with the decedent. Thirdly, to what extent the desires of the decedent as to place of burial should prevail against those of the surviving spouse [is] an open question, but as against the remoter connections, such wishes, especially if

7

strongly and recently expressed, [will] usually prevail.

Factors to which various courts generally have given consideration in permitting disinterment and removal of a body have included public interest, wishes of the decedent, rights and feelings of those entitled to be heard by reason of relationship, rights and principles of religious bodies or other organizations which granted interment in the first burial site, and whether consent was given to interment in the first burial site by the one claiming the right of removal.

We are of the opinion all of these factors are to be considered when appropriate to determining such question and its determination is particularly one for a court of equity. There is no rigid rule for either permitting or refusing removal of a body once interred and each case must be determined on its own merits with due regard to public welfare, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association.

*Hood*, 357 So. 2d at 137 (citations omitted).

¶21. Applying these principles to the facts of this case, it is clear that there is no legal basis for exhuming Alfred's remains. To begin, "the desires of the decedent as to place of burial . . . usually prevail" over the objections of any person save, perhaps, a "surviving spouse." *Id.* And this is "especially" true if the decedent's wishes were "strongly and recently expressed." *Id.* Here, the uncontradicted testimony from five of Alfred's close siblings was that he desired to be buried exactly where he is. In opposition, as discussed above, Lee failed to present any competent evidence of the wishes of a "surviving spouse"—or even that there *is* a surviving spouse. In any event, there is no dispute that Alfred and his alleged wife had not been "in normal marital relations" for years if not decades. *Id.* Accordingly, the alleged wife's notarized-but-unsworn letter, which stated only that she joined Lee's petition, provides no support for exhumation. *Id.* Alfred's desire to be buried where he is must "prevail." *Id.*

8

¶22.    Moreover, "the one desiring removal" in this case (Lee) and Alfred were brothers, but it is clear that there was no close "connection" between them. The siblings who were close to Alfred are opposed to exhumation. This fact also creates a strong "presumption against removal." *Id.*

¶23.    A court will also look at the preferences of "the next of kin in order of their relation to" the decedent, which order may "be modified by circumstances of special intimacy or association with the decedent." *Id.* Here, again, the siblings closest to Alfred all testified that they wanted to follow his desire to be buried on the property. The only people who want to dig up Alfred's remains were not close to him. Even if we were to credit notarized-but-unsworn letters that were not entered into evidence at trial, they are from people who had not seen Alfred in years. Thus, the preferences of the brothers and sisters who were close to Alfred also weigh heavily against exhumation. *Id.*

¶24.    Finally, *Hood* reemphasized the "wishes of the decedent" twice more while also permitting consideration of the "public interest" or "public welfare." Again, the evidence of Alfred's wishes was clear and uncontradicted, and there is no public interest in removing a man's body from his preferred place of burial on private property. Thus, considered collectively, the "*Hood* factors" clearly mandate the denial of Lee's petition.

¶25.    As a reason for reversing and remanding, the dissent asserts that "[t]he record reflects that the Sampson McGriggs estate heirs were not consulted prior to Mac and Lenora Wilkes burying Alfred on the estate property" and "that many heirs [have] objected." It is debatable whether the record is sufficient even to identify the heirs or determine the current status of

9

the property, and we find no evidence that "many heirs objected." What the record clearly does reflect is that five of Alfred's siblings testified under oath that Alfred desired to be buried right where he is and that they want to comply with his wishes. Only Lee testified that he objected. There is no competent evidence of any other relevant objection.

¶26. Thus, if the dissent wants to remand the case for further proceedings so that the chancellor can apply the "*Hood* factors" to the existing record, then there is no need because there is no basis in the evidence for the chancellor to do anything other than deny the petition. There could be no greater abuse of discretion than to order Alfred's body exhumed based on the paltry evidence that Lee presented at trial.

¶27. If instead the dissent wants to remand to allow Lee to present additional evidence, that is also a mistake. Lee had his day in court. It was his burden to present evidence sufficient to justify the extraordinary relief he sought. He failed to do so, and so he lost. He is not entitled to a second bite at the apple simply because the chancellor's ruling "failed" to discuss factors from an opinion that no one ever mentioned.

¶28. There appear to be unresolved property and/or estate issues related to the McGriggs family land. But those must be addressed outside of this case. This case involves only a petition for an order to exhume a body. Lee presented no evidence that would warrant such an order. Accordingly, the chancellor correctly denied his petition, and we affirm.

¶29. **THE JUDGMENT OF THE CHANCERY COURT OF CLAIBORNE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE**

**WRITTEN OPINION.**

**CARLTON, J., DISSENTING:**

¶30. I respectfully dissent from the majority's decision to affirm the chancellor's judgment dismissing Lee McGriggs's petition to exhume or disinter the body of Alfred McGriggs. The chancellor failed to consider the *Hood* factors in determinating whether Alfred's body should be removed and reintered; as a result, I would reverse and remand the chancellor's judgment.

¶31. Lee filed the petition to exhume or disinter Alfred's body from the Sampson McGriggs estate in Claiborne County and relocate it.[5] Lee's petition to exhume argued that his siblings, Mac Arthur McGriggs and Lenora McGriggs Wilkes, placed Alfred's body on the estate on January 25, 2014, in violation of Mississippi Code Annotated section 41-43-1(2) (Rev. 2013), and the petition sought protection of the property rights of all the heirs and descendants of the Sampson McGriggs estate. Lee also provided in his petition that he and Bessie Ola McGriggs Dorsey paid the taxes on the estate. After a hearing on the motion, the Claiborne County Chancery Court denied the petition to exhume the body. Lee now appeals. After reviewing the record, I submit that the chancellor abused his discretion in failing to consider the factors set forth by the Mississippi Supreme Court in *Hood v. Spratt*, 357 So. 2d 135, 136-37 (Miss. 1978), to determine if compelling reasons support Lee's request for relief or disinterment. As a result, I would reverse and remand for proceedings consistent with this opinion.

¶32. This appeal addresses whether the chancellor erred in failing to grant Lee's petition

---

[5] Lee appeals pro se.

to exhume his brother Alfred's body from his burial site on their parents' estate. Lee and Alfred's parents, Sampson and Lenora McGriggs, had thirteen children and owned a sixty-two-acre farm. Sampson, Lenora, and two of their children, all of whom predeceased Alfred, were buried in the Seven Star Cemetery in Claiborne County.[6] Alfred died on January 22, 2014, and two of his surviving siblings, Mac McGriggs and Lenora Wilkes, buried Alfred on their parents' sixty-two-acre estate (which this separate opinion refers to as the Sampson McGriggs estate) in Claiborne County.

¶33. The record reflects that Mac and Lenora Wilkes sought no approval from the Claiborne County Board of Supervisors or other siblings prior to burying Alfred on the family's estate. Both parties represent that they own the property, along with a total of thirty-six heirs.[7] However, the record reflects no declaration of heirs in any intestate proceeding. No portion of the farm was designated as a cemetery, by deed or otherwise. The record reflects that the land is still used as a farm, and cattle still graze on the land. The record also shows that Seven Star Cemetery is available for the relocation and reinterrment of Alfred and others in the McGriggs family.

¶34. Lee filed a pro se petition in chancery court to exhume Alfred's body from the Sampson McGriggs estate and relocate it, and to protect the property rights of the heirs and descendants. The record reflects that the following family members and asserted heirs sent

---

[6] Sampson died in 1994, and Lenora died in 1999.

[7] Lee submits that there are thirty-six "living heirs and descendants" to the Sampson McGriggs estate. Sampson and Lenora McGriggs had thirteen children. I note that Lee's brief asserts that Mac and Lenora Wilkes do not own the farm, and are only heirs.

12

letters to the chancellor also opposing Alfred's burial on the family estate: Hattie McGriggs Jones, Alfred's sister; Kenneth McGriggs, Alfred's son; Karla McGriggs, Alfred's daughter; and Frieda McGriggs, Alfred's widow. The record reflects that these family members and heirs were not consulted with prior to the burial of Alfred on the Sampson McGriggs estate.

¶35. At the hearing on Lee's petition to exhume Alfred's body, the following family members and asserted heirs testified before the chancellor that Alfred wished to be buried on the family estate: Mac McGriggs; Lenora Wilkes; Frank McGriggs, Alfred's brother; David McGriggs, Alfred's brother; and Mary McGriggs Moore, Alfred's sister. The chancellor ultimately denied Lee's petition, finding section 41-43-1 inapplicable and also finding that Mac and Lenora Wilkes were not required to seek the board of supervisors' approval prior to burying Albert on the family's estate. However, the chancellor failed to address Lee's requests to protect the property rights of the heirs and descendants.

¶36. When reviewing a chancellor's findings, this Court will not disturb those findings when supported by substantial credible evidence unless he abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. *In re Spiers*, 992 So. 2d 1125, 1128 (¶10) (Miss. 2008); *see also Lenoir v. Anderson*, 12 So. 3d 589, 592-93 (¶¶6-7) (Miss. Ct. App. 2009) (addressing whether the chancellor erred in adjudicating the rights of the parties relative to a private family cemetery created by the testator and conveyed under a cemetery deed).

¶37. In *Hood*, 357 So. 2d at 136-37, the Mississippi Supreme Court discussed the factors to be considered by the lower court when permitting the disinterment and removal of a body.

13

The *Hood* court expressed "that removal and reinterment of a body is allowable where there are compelling reasons." *Id*. at 137. The supreme court further explained that "no rigid rule [exists] for either permitting or refusing the removal of a body once interred[,]" and stated that "each case must be determined on its own merits with due regard to public welfare, the wishes of the decedent and the rights and feelings of those entitled to be heard by reason of relationship or association." *Id*. The supreme court then discussed the factors to be considered by the lower court in its discretion in determining whether or not a body should be removed. *Id.* (citing *Pettigrew v. Pettigrew*, 56 A. 878 (Pa. 1904)). First, the "surviving spouse ha[s] the paramount right to designate the burial site and, if the parties were living in normal marital relations, a very strong case would be required to justify judicial interference with the survivor's wish." *Id*. Next, if no surviving spouse exists, "the next of kin[,] in order of their relation to the decedent," have the right to select a burial site. The court provided the condition that "the rights of more distant kin might be modified by circumstances of special intimacy or association with the decedent." *Id*. The third factor is considering "to what extent the desires of the decedent as to place of burial should prevail against those of the surviving spouse." *Id*. The court explained that this factor "was left an open question, but as against the remoter connections, such wishes, especially if strongly and recently expressed, would usually prevail." *Id.*; *see also Spiers*, 992 So. 2d at 1128 (¶12) (applying factors set forth in *Hood* and finding that a compelling reason supported the removal of a body).

¶38.    In *Hood*, 357 So. 2d at 136-37, the supreme court "adopted the 'more compassionate

14

approach' to . . . [consideration of] the removal and reinterment of a body when 'compelling reasons' are presented for doing so." *Spiers*, 992 So. 2d at 1128 (¶12); *see also Davis v. True*, 963 So. 2d 1271, 1273 (¶10) (Miss. Ct. App. 2007) (acknowledging the approach and factors set forth in *Hood* that must be considered in determining whether or not a body must be moved). In sum, this Court must review the chancellor's decision and judgment to determine if substantial credible evidence supports a finding that no compelling reasons support disinterment. This Court must also determine whether the chancellor was manifestly wrong or applied an erroneous legal standard.

¶39. Lee argues that the chancellor erred in denying his petition to exhume Alfred's body. Lee asserts that Mac and Lenora Wilkes violated the state's statutory cemetery laws by burying Alfred on the Samson McGriggs estate. Furthermore, Lee argues that Mac and Lenora Wilkes are not the sole owners of the Sampson McGriggs estate, and thus cannot make decisions of this magnitude. The permission of the board of supervisors was not required to bury Alfred on private property. However, "[d]ue and proper regard for the property of another requires of any person, before he engages in the deliberate act of burying a body on land claimed by another, to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so." *Welford v. Dickerson*, 524 So. 2d 331, 334-35 (Miss. 1988) (citing *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986)) (internal quotation marks omitted).

¶40. In his order denying Lee's petition, the chancellor explained that section 41-43-1 provides that a person would need to seek approval from the county board of supervisors

15

only if the person attempted to establish a cemetery within five hundred yards of a medical facility. The chancellor further clarified that the statute "does not state that an individual must seek approval from the board of supervisors if they intend to bury someone on private property[,]" and explained that the statute "does not serve as a directive to anyone intending to bury a body on private property." In finding section 41-43-1 inapplicable, the chancellor did not determine whether, based on the evidence presented, compelling reasons existed for disinterment, as required by *Hood*, 357 So. 2d at 137; *see also Spiers*, 992 So. 2d at 1128 (¶12). In so doing, I submit that the chancellor failed to address Lee's request in his petition for relief to protect the property rights of the heirs and descendants at issue.[8]

¶41. However, Mississippi law recognizes that the conduct of burying a body on private land without the landowner's permission "constitutes [a] statement slandering . . . title. Slander of title may consist of conduct which brings or tends to bring in question the right or title of another to particular property." *Welford*, 524 So. 2d at 334. The record reflects that the Sampson McGriggs estate heirs were not consulted prior to Mac and Lenora Wilkes burying Alfred on the estate property. The record also shows evidence that many heirs

---

[8] The record reflect that Sampson and Lenora McGriggs acquired the property at issue in 1948. As stated previously, Sampson died in 1994 and Lenora died in 1999. *See In re Estate of McCullough*, 32 So. 3d 403, 407-11 (¶¶11-25) (Miss. 2010) (intestate adjudication of heirs); *In re Heirship of McLeod*, 506 So. 2d 289, 292-93 (Miss. 1987); *In re Estate of Kidd*, 435 So. 2d 632, 634 (Miss. 1983) (In accordance with Mississippi Code Annotated section 15-1-49 (Rev. 2012), a six-year statute of limitations applies to heirship determinations once a cause of action accrues.); Miss. Code Ann. § 91-1-29 (Rev. 2013) (A petition to determine heirs shall proceed as any other cause in chancery court; all putative heirs shall be cited to appear.). *See also* Miss. Code Ann. § 91-1-15 (Rev. 2013) (time-bar in establishing paternity); *Walker v. Matthews*, 191 Miss. 489, 3 So. 2d 820, 825 (1941) (in suit for determination of heirs, evidence showed individual was not legitimate son of intestate).

objected.

¶42.    In *Spiers*, the Mississippi Supreme Court recognized that although "Mississippi has no precedent directly on point, . . . it is not unprecedented to allow disinterment of a body so that those closest in kinship to the deceased can more easily visit the grave." *Spiers*, 992 So. 2d at 1130 (¶20) (citing *Bradley v. Burgis*, 25 So. 2d 753 (La. Ct. App. 1946) (widow allowed to disinter and move husband's body because it had become impossible for her to visit his grave without being confronted with hostility); *Mallen v. Mallen*, 520 S.W.2d 736 (Tenn. Ct. App. 1974) (disinterment and relocation of husband's body from family plot allowed due to hostility between husband's family and widow)).  The Mississippi Supreme Court in *Spiers* considered the *Hood* factors, as established in *Hood*, 357 So. 2d at 137, and the totality of the circumstances in finding that the chancellor's decision was not supported by substantial credible evidence.  *Spiers,* 992 So. 2d at 1130 (¶21).  The supreme court, in *Spiers*, specifically found that the *Hood* factors weighed heavily in favor of disinterment and relocation of the body where there was no consent to the first burial and also based on the right to be heard by reason of the relationship.[9]  *Id*.

---

[9] In *Mississippi Chancery Practice* § 44:10 (2015), James Shelson explained:

The chancellor should consider the following factors in determining whether to permit a body to be moved after it has been interred, and not merely whether the surviving spouse has a compelling reason for the reinterment:

(1) the public interest;

(2) wishes of the decedent, especially if strongly and recently expressed;

(3) rights and feelings of those entitled to be heard by reason of

17

¶43.    In this case, the chancellor failed to consider the *Hood* factors in determinating

whether Alfred's body should be removed and reintered;[10] therefore, I would reverse and

remand the chancellor's judgment.  Accordingly, I respectfully dissent.

relationship;

> (4) rights and principles of religious bodies or other
> organizations that granted interment in the first burial site;

> (5) whether consent was given to internment in the first burial
> site by the one claiming the right of removal.

Where a court is faced with the competing interest of the biological parents of a deceased child, it should consider these factors, but each case must be determined on its own merits.

[10] "Courts of equity concern themselves with civil rights as well as property rights." *Smith v. State*, 242 So. 2d 692, 694 (Miss. 1970).